UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No.: 2:18-CR-160 |
| v. | ) | |
| | ) | **JUDGE GREER** |
| NICHOLAS NASSIF HAYEK | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
OBJECTIONS OF DEFENDANT TO THE PRESENTENCE
INVESTIGATION REPORT**

Comes now the United States of America, by and through, the Acting United States Attorney for the Eastern District of Tennessee and responds in opposition to the defendant's "Objection to The Adjustment for Obstruction of Justice," filed in Document 165. The United States respectfully requests that defendant's "Objection Number 10" be overruled and states the following in support thereof:

*I.   Pertinent Facts*

*During the Suppression hearing and at Trial the United States presented the following evidence:*

During the execution of a search warrant at the defendant's home, special agents and investigators with the Federal Bureau of Investigations (FBI) met with the defendant. The interaction was recorded and entered into evidence at both the suppression hearing and trial. The recorded interview captured agents reading the defendant his *Miranda* rights from the FBI's Advice of Rights form. The defendant acknowledged his rights and consented on the form to waive his rights. The form was introduced into evidence at the defendant suppression hearing. The interview was approximately an hour and half in length. The nature of the questioning varied from pointed questions that were corroborated by evidence, to the defendant freely speaking about other investigative possibilities for the

1

agents. No one raised their voice, nor were any threats made. The defendant can be clearly heard on the audio recording. His speech is neither slurred nor delayed. Further in the interview, the defendant never invoked his right to remain silent, nor asked for a lawyer. Moreover, he never enquired about his family's wellbeing on the audio recorded interview.

During the interview the defendant initially denied contact with minors, but after being presented with phone conversations and images of the victim, he admitted to the agents that what he did was wrong. During the recorded interview, he confirmed that he knew the victim was ten years old. He also admitted that, after learning her age, he asked for and received photos of her naked body.

Despite this lengthy recording and the written waiver, the defendant alleged at the suppression hearing and again at trial that he was intoxicated, too impaired to understand his rights and was subject to coercion and duress by the investigators. During the suppression hearing, the defendant claimed that he was coerced by the investigators prior to giving the statement. He testified that "[f]or about an hour…" prior to the recording he repeatedly asked for an attorney and stated he did not want to speak the investigators. (Exhibit 1, Hearing Transcript, Page 10-1). At the hearing, the defendant stated that he remembered everything that happened prior to the recorded interview but he did not remember anything that happened during the hour and half recorded interview. (Id. at Page 28-9).

At trial, in addition to the defendant's recorded statement, the United States presented numerous text conversations between the defendant and the victim, as well as photos that were sent to the defendant and saved in his phone. In his trial testimony, the defendant testified again about the interview. He told the jury that he was intoxicated and was coerced by the agents to cooperate. He then offered new information, never mentioned during the suppression hearing. He explained to the jury that one of the investigators hit

2

him and broke his glasses prior to the interview. During trial a pair of broken glasses was entered into evidence by the defendant. The defendant also testified that, after threatening him, the investigators told him exactly what to say during the recorded interview. He told the jury that the agents held up papers and phones with statements that he read aloud during the interview process. He explained to the jury that, because he was threatened by the agents, he lied in the interview and falsely admitted guilt in the case, specifically that he knew the victim's age and that he received child pornography. He then claimed that the conversations between him and the victim were all part of a roleplaying game and due to a bad internet connection, he never received a clear picture of the victim. Not only did the text conversations between the defendant and victim and between the defendant and an FBI agent operating in an undercover capacity contradict this testimony, the defendant's own cellular phone also reflects that he not only received images of the victim, but he also saved and cataloged the images of the victim.

## II. Law

Perjurious testimony can support the Obstructing or Impeding the Administration of Justice enhancement in U.S.S.G. § 3C1.1. The Sixth Circuit has held based on "precedents of the Supreme Court and of this court" that the Court "must fulfill two requirements" for perjury to qualify for the obstruction enhancement. *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997)). "[F]irst, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must "either make specific findings for each element of perjury or at least make a finding 'that encompasses all of the factual predicates for a finding of perjury." *Id.*(quoting *United States v. Dunnigan*, 507 U.S. 87, 113 (1993)). Further, the perjury must be material to the case. "Under the guideline, "material" means a statement "that, if believed, would tend to influence or affect

3

the issue under determination." *United States v. Martin,* 24 F. App'x 504, 510; (quoting U.S.S.G. § 3C1.1, comment, (n.6)).

Therefore, if the Court finds "the defendant was untruthful at trial with respect to material matters in this case" and that the "untruthful testimony on material matters was designed to substantially affect the outcome of the case" a finding of perjury for the purposes of the Obstructing or Impeding the Administration of Justice enhancement is satisfied. *United States v. Chance,* 306 F.3d 356, 390 (6th Cir. 2002) (emphasis and internal quotation marks omitted) (quoting *United States v. Dunnigan,* 507 U.S. 87, 95 (1993)); *United States v. Davis*, No. 20-6116, 2021 WL 4988337, at *5 (6th Cir. Oct. 27, 2021).

### III. Argument

The defendant perjured himself during his suppression hearing and again at trial. Initially, the defendant gave a voluntary statement and in the that statement he admitted to his involvement in the production and enticement of child pornography. However, at trial the defendant presented a different theory of the case. But, in order for the defendant to proceed on this new theory he needed to deny the voluntariness of the interview with agents. In denying statements and the voluntariness of the interview, he clearly perjured himself multiple times as evidenced by his recorded statement and sworn testimony at the suppression hearing and trial.

The Sixth Circuit held in *United States v. Martin* that the defendant provided perjurious testimony when the defendant denied, during a suppression hearing, being read *Miranda,* and denied statements he made in the post-*Miranda* interview. The court reasoned that the defendant's denials attacked the credibility of the investigators and thereby "was the central issue before the court in determining what took place during [the defendant's] arrest and whether his statements should be suppressed." 24 Fed.App'x 504,

4

510–11 (6th Cir. 2001). Therefore "attacking the credibility of the officers would be material to the issue before the court." *Id*. Further, the court noted that the district court clearly found the defendant's statement "not credible on the basis of the testimony, the evidence submitted and the lighting schematic." *Id*.

This case is no different. The defendant gave a voluntary statement to agents after being advised of his *Miranda* rights. He chose to waive those rights as documented verbally and in writing. While the defendant claimed at both the suppression hearing and trial that he was intoxicated during the interview and did not know what he was agreeing to, the audio recording showed that his speech was neither slurred nor delayed and his responsiveness to questioning was not consistent with someone intoxicated. Additionally, he stated that he remembered asking for an attorney multiple times prior to the recorded statement, but did not remember anything that happened during the hour and half recorded interview. That he would have a clear memory of events prior to the recording but be too intoxicated to remember the proceeding hour and a half interview is preposterous.

Also, during the suppression hearing he testified that he felt coerced by the agent's statements about his family's immigration status. (Exhibit 1, at Page 12). However, during the trial, he added that not only was he verbally threatened but he was physically assaulted by one of the investigators prior to the recorded interview. And, while the defendant testified that this coercion and duress by agents caused him to make false statements during the interview, the recorded statements and supporting evidence tell a different story. The recorded statement captures the defendant joking with the agents and volunteering information without being asked, demonstrating he was neither coerced nor under duress. Further, the evidence presented at trial via his recorded statement, forensic review of his cellular phone, and conversations with the victim directly contradict the

defendant's denial that he was aware of the victim's age and that he received nude images of the victim.

Clearly the defendant's goal in setting forth perjurious material was to attack the credibility of the agents involved and to undermine the inculpatory evidence he provided during the interview. Both reasons are certainly material to the case and "if believed" would have affected the outcome of the case.

*Conclusion*

Based upon the foregoing, the United States respectfully submits that the defendant's objection should be overruled.

Respectfully submitted, this Wednesday, December 22, 2021.

                              FRANCIS M. HAMILTON III
                              Acting United States Attorney

By:   s/ *Meghan L. Gomez*
       MEGHAN L. GOMEZ
       Assistant United States Attorney
       FL BPR # 068858
       220 W. Depot Street, Suite 423
       Greeneville, Tennessee 37743
       (423) 639-6759
       meghan.gomez@usdoj.gov